# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

KEITH BURGESS,

     Plaintiff,

     v.

ROBERT WEHN, *CO II*,
DENISE GELSINGER, *Warden,* and
STEPHEN MOYER, *Secretary*,

     Defendants.

Civil Action No. TDC-18-2168

## MEMORANDUM OPINION

Plaintiff Keith Burgess, an inmate at the Patuxent Institution ("Patuxent") in Jessup, Maryland, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against Roxbury Correctional Institution ("RCI") Correctional Officer II Robert Wehn; RCI Warden Denise Gelsinger; and Maryland Secretary of Public Safety and Correctional Services Stephen Moyer. Defendants have filed a Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment. Burgess has responded. Having reviewed the Complaint and submitted materials, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion will be granted.

## BACKGROUND

On July 13, 2018, Burgess filed his verified Complaint in which he alleged that on January 20, 2018 at approximately 5:30 p.m., while housed at RCI, he was stabbed by other inmates when he was returning to his cell after dinner. Burgess cried out for help but did not receive any until his cellmate assisted him by pulling him into their cell and tending to his wounds. According to

Burgess, when Wehn, while conducting a prisoner count, looked into Burgess's cell, Burgess called out "CO! You got to get me out of here! I just got stabbed!" Compl. ¶ 13, ECF No. 1. Wehn looked at Burgess, who was bloody, mumbled, and kept walking. Burgess rushed to the door and continued to yell that he needed assistance, but Wehn continued the count. Burgess laid down in his cell and waited for medical staff to arrive, but it did not. He later kicked his door to alert staff that he needed help, but no one came to his aid.

When the cell doors opened for recreation at approximately 6:45 p.m., Burgess tried to make his way off the tier and to a correctional officer, but he was again stabbed from behind by multiple inmates. After this second assault, correctional officers came to his aid, and he was taken to the medical unit and ultimately to the hospital for treatment.

On January 20, 2018, Wehn was assigned to the Control Center for Housing Unit 2, in which Burgess's cell was located. According to Wehn, he did not leave his Control Center post during his shift and was not present on the tier floor when the inmate count was conducted. Wehn denies seeing any altercation involving Burgess or any other inmates when inmates were returning from dinner that evening. Later, when the inmates were released for recreation, Wehn saw Burgess and another inmate in the housing unit's lobby area. Wehn did not see any signs of injuries on Burgess. According to Wehn, Burgess and the other inmate were facing off in what appeared to be an imminent physical altercation. Burgess did not retreat from the other inmate. Wehn called out that a fight was about to begin and radioed for correctional officer assistance. After the fight began, two other inmates joined in. The responding officers directed the inmates to stop fighting and, when they did not, used pepper spray. Burgess was then directed to the floor and was secured with handcuffs. Because he had suffered multiple stab wounds in his back and left side and was bleeding from his face, Burgess was escorted to the medical unit and ultimately to the hospital.

2

Among other injuries, Burgess had a punctured lung. Two of the other inmates involved in the fight fled but were located and escorted to the dispensary for treatment of their injuries. The third inmate involved was not identified. Although Burgess told an officer that he was "hit" by his own gang, Mot. Dismiss Ex. 1 at 4, ECF No. 12-2, he declined to give a statement or talk to the investigating officer, other than to say that the incident was a "misunderstanding." Mot. Dismiss Ex. 2 at 9, ECF No. 12-3.

Following the events of January 20, 2018, a Serious Incident Report was prepared, and the matter was referred to the Intelligence and Investigative Division ("IID") for investigation. On January 22, 2018, Burgess filed a Complaint Withdrawal form in which he requested that no investigation be conducted and that the matter be closed. Without Burgess's cooperation, the IID closed the case.

According to Burgess, he filed an Administrative Remedy Procedure grievance ("ARP") regarding the incident that was denied. Burgess states that he did not file an appeal because at that time he was on lock down and "could not learn how." Compl. ¶ 22. A review of Inmate Grievance Office ("IGO") records revealed that to the extent that Burgess had filed an ARP or other grievance relating to the incident, he did not file an appeal to the IGO. Separately, Burgess filed an ARP complaining that when he returned from the hospital on January 28, 2018 after receiving treatment for his injuries sustained in the January 20 assault, his property was missing. After that ARP was resolved, Burgess appealed the determination to the IGO on May 22, 2018.

## DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6) or summary judgment under Rule 56. In support of their Motion, Defendants argue that Burgess has alleged no facts demonstrating personal involvement by Defendants Gelsinger and Moyer, and

there is no vicarious liability under § 1983; Burgess failed to exhaust administrative remedies; Burgess has failed to allege or establish a constitutional or statutory violation that would entitle him to relief under § 1983; and Defendants are entitled to qualified immunity.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

Defendants filed their Motion as a Motion to Dismiss or, in the Alternative, for Summary Judgment and attached exhibits for consideration. Typically, when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as

a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. As to the second requirement, the nonmoving party can show that a reasonable opportunity for discovery has not been afforded by filing an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). In his memorandum in opposition to the Motion ("Opposition"), Burgess requests discovery of the "DPSCS rules and policies that were followed regarding this incident and all correctional officer's duties and responsibilities while conducting count and while at the control center post from defendants." Opp'n Mot. Dismiss at 1, ECF No. 14. Burgess does not explain how any of the requested materials are essential to opposing Defendants' Motion. More importantly, because, as discussed below, the Court finds that the Motion will be granted based on the failure to exhaust administrative remedies, it concludes that such discovery is not necessary prior to the resolution of the Motion. Under these circumstances, the Court will construe Defendants' Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.    New Allegations

In his Opposition, Burgess appears to attempt to expand his claims. Among other new allegations, Burgess asserts that because he is labeled as a gang member, he does not receive assistance from staff; he was denied protective custody, which required him to skip meals and stay locked in his cell; and he has been denied access to adequate legal materials at Patuxent. Briefs in opposition to a dispositive motion may not be used to amend a complaint or add new claims. *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)), *aff'd*, 2 F.3d 56 (4th Cir. 1993); *see also Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) (stating that a plaintiff "is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint"), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Thus, to the extent that Burgess seeks to add new claims, the Court will not consider them.

## III.    Appointment of Counsel

In his Opposition, Burgess also seeks the appointment of counsel, citing an alleged lack of access to legal materials. He claims that he is only permitted 2.5 hours per week in the law library. He further alleges, without explanation, that he would need 15-20 hours per week of library time in order to have meaningful access to research case law. He also asks that the institution provide

him with paper, pens, stamps, and large envelopes. As Burgess has previously been advised, a federal district court may appoint counsel when an indigent claimant presents exceptional circumstances. 28 U.S.C. § 1915(e)(1) (2012); *see Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982) (per curiam). Exceptional circumstances include a litigant who "is barely able to read or write," *Whisenant v. Yuam*, 739 F.2d 160, 162 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989), or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008). Upon consideration of Burgess's filings, the Court finds that he has demonstrated the ability either to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so. He has not demonstrated that the standard allotted law library time is insufficient to permit him to litigate his case. The request for appointment of counsel is denied.

## IV.    Vicarious Liability

As a threshold issue, all claims against Gelsinger and Moyer must be dismissed because Burgess makes no direct allegations against either of them. To the extent that Burgess seeks to hold Gelsinger and Moyer responsible for the actions of subordinates, the doctrine of *respondeat superior*, or vicarious liability, is not applicable to § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (holding that there is no *respondeat superior* liability under § 1983). Under § 1983, any liability imputed to supervisory officials must be "premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)). Thus, supervisory liability under § 1983 must be supported with evidence that: (1) the

supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). "A single act or isolated incidents are normally insufficient to establish supervisory inaction upon which to predicate § 1983 liability." *Wellington v. Daniels*, 717 F.2d 932, 936 (4th Cir. 1983) (footnote and citations omitted).

Here, Burgess has failed to plead or demonstrate sufficient facts showing that Gelsinger or Moyer exhibited supervisory indifference to, or tacit authorization of, any misconduct. In particular, there is no allegation or evidence that these officials were aware of or involved in the alleged failure to protect Burgess from an attack by fellow inmates or alleged delay in securing medical care. Accordingly, all claims against Gelsinger and Moyer must be dismissed.

## V.    Exhaustion of Administrative Remedies

Defendants raise the affirmative defense that Burgess has failed to exhaust his administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134 § 803, 110 Stat. 1321 (1996) (codified as amended at 42 U.S.C. § 1997e(a)):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (2012). Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 136 S. Ct. at 1859-60.

In Maryland prisons, for the type of grievance asserted by Burgess, the Administrative Remedy Procedure ("ARP") is the administrative process that must be exhausted. *See generally* Md. Code Ann., Corr. Servs. §§ 10-201 to -210 (West 2002); Md. Code Regs. ("COMAR") 12.02.28.02(B)(1) (2018) (defining the ARP). First, a prisoner must file a grievance, known as an "ARP," with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. Second, if the ARP is denied, a prisoner must file an appeal with the Commissioner of Correction within 30 days. If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* Md. Code. Ann., Corr. Servs. §§ 10–206, 10–210 (West 2002); COMAR §§ 12.07.01.03, 12.07.01.05.B. Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10–210.

It is clear from the record evidence that Burgess failed to exhaust his administrative remedies as to his claim. To the extent that he may have filed an ARP complaining about Wehn's alleged failure to protect him, he did not appeal the matter up to the IGO. Although Burgess claims that he was on "lock-down" and did not know how to file an appeal of the dismissal of his ARP, Compl. ¶ 22, this explanation does not meet the *Ross* standard for a finding that the ARP process was unavailable. Moreover, the record shows that Burgess had both the ability and knowledge to file appeals of ARPs to the IGO. Specifically, in the same time frame, Burgess filed a separate ARP relating to property lost while he was in the hospital, and he filed an appeal of the denial of that ARP with the IGO. Accordingly, Burgess's claim must be dismissed for failure to exhaust administrative remedies.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, will be GRANTED. A separate Order shall issue.

Date: September 9, 2019

THEODORE D. CHUANG
United States District Judge